**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-00874-CMA-MJW

GREG MENO,

      Plaintiff,

v.

FEDEX CORPORATE SERVICES, INC., a Delaware corporation,

      Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. # 27.)  In this discriminatory discharge case, Plaintiff Greg Meno alleges that his former employer, Defendant FedEx Corporate Services, Inc., discriminated against him on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  (Doc. # 1-1.)  Plaintiff also brings state-law claims for breach of implied contract or promissory estoppel for his allegedly wrongful discharge.  (*Id.*) Jurisdiction is proper under 28 U.S.C. § 1331 (federal question).[1]  Upon review of the parties' filings and the evidence referenced therein, the Court determines that genuine disputes of material fact exist, which preclude the Court from granting summary judgment.

---

[1] The Court has jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

# I.  BACKGROUND[2]

Plaintiff, of Guamanian origin, was employed by Defendant from January 1, 2005, until Defendant terminated him on June 4, 2010.  (Doc. # 27, ¶¶ 1, 23.)  Plaintiff's duties included "investigating areas of concerns and problems brought to his attention, managing overall performance of [his] team, interacting with sales and customers, and putting in place processes to ensure that his team was not creating a negative experience with customers."  (*Id.,* ¶ 4.)  At the time Defendant terminated him, Plaintiff had never received a poor performance evaluation or any disciplinary action, whether verbal or documented, and had not been placed on a performance improvement plan by Defendant.  (Doc. # 32 at 9, ¶¶ 2-6.)

In the course of his supervisory duties, Plaintiff consistently had trouble with one employee, Michael Steele.  (*Id.* at 9, ¶ 8; 12, ¶¶ 27-28.)  Plaintiff relied on his super-visor, Mary Gonzales, and his Human Resources Advisor, Patty Pierce, for direction on how to effectively discipline Steele.  (*Id.* at 9.)

On February 9, 2010, Plaintiff received an email from a subordinate stating that Steele had told her he wanted to kill one of Defendant's account executives.  (*Id.* at 9, ¶ 8.)  Plaintiff immediately forwarded the email to Gonzales.  (Doc. ## 32 at 9, ¶ 9; 32-2 at 14.)  However, Steele's inappropriate behavior was not discussed until three days

---

[2] When addressing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party.  *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476 (10th Cir. 1993).  Thus, in the instant case, reasonable inferences are drawn and factual ambiguities are resolved in Plaintiff's favor.

later during a conference call between Gonzales, Pierce, and Plaintiff.  (Doc. # 27, ¶¶ 29-30.)  After the call, in response to Steele's threat, Gonzales initiated a work place violence protection plan and notified security.  (*Id.*, ¶ 30.)  Defendant alleges that Plaintiff's responsibility included initiating the workplace violence protection plan by entering the details of the alleged incident into the workplace violence system.  (*Id.*, ¶ 31.)  However, Plaintiff asserts that he was only required to inform the manager of the situation, and that he did so immediately.  (Doc. # 32 at 7, ¶ 31; 9 at ¶ 9.)  Further, Plaintiff argues that the three-day delay in processing the incident was due to Gonzales's failure to read the email closely.  (*Id.* at 10, ¶ 11.)  In any event, Steele was on vacation during the three-day period, and when he returned Defendant suspended him with pay as the investigation into the workplace violence threat proceeded.  (*Id.*)

Although Steele had numerous complaints lodged against him during the time he was supervised by Plaintiff,[3] Gonzales and Pierce did not support Plaintiff's decision to terminate him.  (Doc. # 27, ¶¶ 12, 15.)  When Plaintiff approached Pierce regarding his decision to terminate Steele, Pierce remarked, "I don't know where you come from, but you don't – this is not how we do it," and, "[w]ell that's a different breed."  (*Id.*, ¶ 15.)

Despite Plaintiff's knowledge that Pierce and Gonzales did not agree with terminating Steele, on April 15, 2010, Plaintiff gave them a "binder of material supporting the request for termination of Steele . . . ."  (Doc. # 32 at 11, ¶ 20.)  Pierce

---

[3] During the 2010 fiscal year, more than 21 complaints were filed against Steele, including "15 serious cases for which he was removed from the account relationship . . . ."  (Doc. # 32 at 12, ¶ 27.)

and Gonzales determined that Plaintiff's request was incomplete because they believed it lacked adequate information and, therefore, they decided not to terminate Steele. (Doc. # 27, ¶ 18.)  Plaintiff asserts, however, that the binder contained the requisite information when he gave it to Pierce and Gonzales but that forty-six pages of supporting documentation were subsequently removed from it.  (Doc. # 32 at 4-5, ¶ 18(d)-(e); 11, ¶¶ 22, 24.)

On March 15, 2010, Plaintiff filed a complaint with Defendant's legal department to "protect [his] Fed Ex management career from retaliation from upper management." (Doc. # 32 at 10, ¶ 16.)  On June 4, 2010, Plaintiff was terminated for "seven (7) specific instances of management leadership failure."  (Doc. # 27, ¶ 23.)  Defendant stressed that the most serious violation committed by Plaintiff was "his failure to properly handle [the] work place violence incident involving Steele."  (*Id.*, ¶ 28.)  On the same day that Plaintiff was terminated, Defendant returned Steele to active status.  (Doc. # 32 at 12, ¶ 28.)  Despite Steele's record of poor performance, he was awarded a salary increase and an annual bonus.  (*Id.* at 13, ¶ 30.)

Plaintiff appealed his termination through Defendant's internal appeals process arguing that, pursuant to procedures set forth in Defendant's employee handbook, he should have been progressively disciplined because his conduct did not amount to "leadership failure," an offense that is subject to immediate removal.  (*Id.* at 6, ¶ 27; 5, ¶ 22-23; 17-20.)  His appeal was denied.  (Doc. # 27, ¶ 25.)

Plaintiff filed his Complaint in the District Court, City and County of Denver, on April 4, 2011.  (Doc. # 1.)  Defendant removed the action to this Court (*id.*), and filed its Motion for Summary Judgment on January 10, 2012 (Doc. # 27).  Plaintiff responded on January 30, 2012 (Doc. # 32), and Defendant replied on February 15, 2012 (Doc. # 34).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  In applying this standard, the Court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.  *Id.* at 670-71.  To meet this standard, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential

element of that party's claim.  *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Id.*  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

### III.  ANALYSIS

For his allegedly wrongful discharge, Plaintiff asserts national origin discrimination under Title VII, as well as breach of implied contract or promissory estoppel under state law.

### A.    DISCRIMINATION CLAIM

With respect to Plaintiff's discrimination claim, the Court applies the familiar *McDonnell Douglas* burden-shifting analysis because Plaintiff attempts to prove his claim through circumstantial evidence.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, Plaintiff must first establish a *prima facie* case of discrimination by Defendant.  *English v. Colorado Dept. of Corr.*, 248 F.3d 1002, 1008 (10th Cir. 2001); *see also Kendrick v. Penske Transp. Servs., Inc.*,

220 F.3d 1220, 1226 (10th Cir. 2000).  If Plaintiff does so, the burden shifts to

Defendant to articulate a legitimate non-discriminatory reason for discharging Plaintiff.

*Id.*  If Defendant, in turn, articulates such a reason, the burden shifts back to Plaintiff to

demonstrate that Defendant's proffered reason is pretextual.  *Id.*

       Based on the allegations in Plaintiff's Complaint, as well as the *prima facie* case

he set forth in his response to Defendant's motion, the Court understands Plaintiff's

claim to be one of discriminatory discharge.  (*See* Doc. ## 1; 32 at 13-14.)  To establish

a *prima facie* case of discriminatory discharge, Plaintiff must prove that: "(1) he belongs

to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he

was discharged; and (4) the job was not eliminated after his discharge."  *Kendrick*,

220 F.3d at 1229 (stating that "[t]he firing of a qualified minority employee raises the

inference of discrimination because it is facially illogical to randomly fire an otherwise

qualified employee and thereby incur the considerable expense and loss of productivity

associated with hiring and training a replacement"); *see also English*, 248 F.3d at 1008.

As is obvious from the *prima facie* test, Plaintiff is not required to "show he was treated

less favorably than a person outside the protected group," as Defendant asserts.  *See,*

*e.g.*, *Bronakowski v. Boulder Valley Sch. Dist.*, 549 F. Supp. 2d 1269, 1279 (D. Colo.

2008) (stating that the plaintiff "need not show he was treated less favorably than a

person outside the protected group to satisfy the fourth prong of his [discriminatory

discharge] prima facie case").

Here, Plaintiff has satisfied the *prima facie* case for discriminatory discharge because he: was Guamanian (a protected class); was qualified for his job, as he never received a negative performance review or other type of discipline; he was terminated; and his job was not eliminated after his discharge.  (Doc. # 32 at 13-14.)  As such, the burden shifted to Defendant to articulate a legitimate, non-discriminatory reason for terminating Plaintiff.  "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]." *English,* 248 F.3d at 1009 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254-56 (1981)).  Defendant met this burden by presenting evidence of seven reasons for discharging Plaintiff – all regarding his "leadership failure."  (Doc. # 27, ¶ 23.)  Accordingly, the burden shifted back to Plaintiff to demonstrate that Defendant's proffered reasons for discharging him were pretextual.

A plaintiff typically makes a showing of pretext by providing evidence that the: (1) defendant's reason for discharging him was false; (2) defendant acted contrary to written company policy prescribing the action to be taken in the given circumstances; or (3) defendant acted contrary to unwritten company policy.  *English*, 248 F.3d at 1009 (quotation marks and citation omitted).  Here, Plaintiff has produced evidence that Defendant's reasons for discharging him were false.  Specifically, Plaintiff cites to evidence that he tried multiple times to terminate Steele but Pierce and Gonzales would not allow him to do so.  (Doc. ## 27, ¶¶ 12, 15; 32 at 4, ¶¶ 12, 15.)  This evidence indicates a genuine dispute as to whether Defendant's stated reasons for firing Plaintiff

8

were pretextual.  Defendant has failed to address adequately Plaintiff's evidence.[4]

Instead, Defendant repeatedly asserts that Plaintiff was not similarly situated to Steele.

(*See, e.g.,* Doc. # 34 at 2-3.)  However, as previously indicated, Plaintiff is not required

to show that he was treated differently than a similarly situated employee for his

discriminatory discharge claim.  *See, e.g.*, *Bronakowski*, 549 F. Supp. 2d at 1279.

Thus, given the facts and the evidence set forth in the parties' filings, the Court

has determined that a genuine dispute of material fact exists as to whether Defendant's

non-discriminatory reasons for Plaintiff's termination were pretextual, especially in light

of Pierce's comments to Plaintiff, which could be interpreted as discrimination on the

basis of national origin.

**B.      STATE LAW CLAIMS**

Regarding Plaintiff's claim for breach of contract or promissory estoppel, the law

in Colorado is clear that "an employee is presumed to have been hired on an at-will

basis absent an express contract for a definite period of time."  *Snoey v. Advanced*

*Forming Tech.*, 844 F. Supp. 1394, 1398 (D. Colo. 1994).  An at-will employee "may be

---

[4] Defendant contends that Plaintiff's affidavit violates the "sham affidavit" doctrine.  (Doc. # 34 at 4-6.)  The Tenth Circuit has held that "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue . . . ."  *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1996).  The Court refuses to apply the doctrine here, however, because Defendant fails to show inconsistencies between Plaintiff's affidavit and his prior sworn testimony.  For example, Defendant provides the Court with an excerpt of Plaintiff's deposition – where Plaintiff acknowledges Defendant's policy allowing for an employee to be terminated on a first offense – and argues that it contradicts Plaintiff's affidavit, where he acknowledges Defendant's progressive discipline policy.  (Doc. # 34 at 6.)  The Court does not view these statements as contradictory because they simply recognize that, while Defendant can terminate someone on a first offense, Defendant also has procedures for disciplining employees progressively.

terminated . . . without cause and without notice, and whose termination does not give rise to a cause of action." *Burrill v. GTE Gov't Sys. Corp.,* 804 F. Supp. 1356, 1358 (D. Colo. 1992) (quotation marks and citation omitted).

However, in the absence of an employment contract for a definite period of time, two closely related exceptions apply to rebut the existence of an at-will employment contract. *Id.* The first exception requires an employee to "show that the employer's promulgation of termination procedures was an offer and that the employee's initial or continued employment constituted acceptance of that offer." *Id.* (quotation marks and citation omitted). The second exception permits an employee to "enforce the termination procedures under a theory of promissory estoppel if he can demonstrate that the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedure, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures." *Id.* (quotation marks and citation omitted); *see also Snoey*, 844 F. Supp. at 1399.

Given the facts and evidence presented, the Court has determined that a genuine dispute of material fact exists as to whether Plaintiff relied on Defendant's employee handbook to the extent that his at-will relationship with Defendant was materially altered. (See Doc. # 32-2 at 12.) Specifically, Plaintiff asserts that he relied on the procedures set forth in the employee handbook and that if they had been applied

fairly to him, he would have been progressively disciplined.   (Doc # 32 at 19-20.)

Defendant asserts that the procedures were followed and Plaintiff's offense was serious

enough to warrant his immediate termination.  (Doc. # 27, ¶ 37.)  The Court cannot

resolve this factual dispute on a motion for summary judgment.  *See Burrill* 804 F. Supp.

at 1362 (finding that a dispute as to whether an employer followed procedures set forth

in its employee handbook regarding an at-will employee's termination is an issue that

must be left to the trier of fact).

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary

Judgment (Doc. # 27) be DENIED.

DATED:  July __11__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge